# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: Mobile Addiction, LLC,

Debtor.

Case No. 19-11449

---

## United States Trustee's Motion to Dismiss

---

Under 11 U.S.C. § 1112(b), the United States Trustee moves the Court to dismiss this case for cause. The Court faces only one issue:

> Cause exists if there is an unexcused failure to satisfy timely any filing or reporting requirement under the Bankruptcy Code; or if there is substantial loss to or diminution of the estate and no reasonable likelihood of rehabilitation. Here, debtor Mobile Addiction has not filed any operating reports and has made no progress toward a sale or other resolution. Does cause for dismissal exist?

The answer is yes. Mobile Addiction is effectively no longer a debtor-in-possession because it handed over the business to a subsidiary of its sole secured creditor. This arrangement appears to have made it impossible for the debtor to meet its reporting obligations. And the swift resolution promised at the outset of the case appears distant now, more than five months since the filing of the petition. Cause exists, and dismissal is the only sensible remedy.

## Background

Before bankruptcy, Mobile Addiction operated a business selling cellphones, accessories, and prepaid cellphone services. To fuel the business's rapid expansion, Mobile Addiction entered into an unwritten agreement through which VIP Wireless, Inc., provided the debtor with phones and accessories on credit, with 90-day repayment terms. This enabled Mobile Addiction to expand to more than 100 retail locations across several states.

In November 2018, VIP Wireless demanded an accelerated payment schedule for the goods it provided on credit, and Mobile Addiction alleges that its attempts to accommodate this accelerated schedule made it difficult to sustain the business's cash flow. In February 2019, Mobile Addiction entered into a forbearance agreement that granted VIP Wireless a security interest in all of the debtor's assets and committed Mobile Addiction to debt payments of $57,500 per week. Mobile Addiction, however, still struggled to operate under the forbearance agreement. By June, it had ceded its day-to-day operations to VIP Management, LLC—a wholly-owned

subsidiary of the secured creditor, VIP Wireless—under an oral agreement.

Mobile Addiction—through its owner and sole member, Charles Thomas—filed its chapter 11 petition on July 30, 2019.[1] At the time, VIP Management still had total control over the debtor's operations. A little over a month later, on September 4, Mobile Addiction filed a motion under 11 U.S.C. § 363(b)(1) to approve a management contract with VIP Management, which the Court approved on September 27.[2] Among other things, the contract:

- gave VIP Management ultimate control over the operations of Mobile Addiction's 115 retail stores, including all matters pertaining to the employment of Mobile Addiction's staff;[3]

- designated Bill Long, Mobile Addiction's director of operations, as the direct manager of the retail staff and as the debtor's liaison to VIP Management;[4]

- entitled VIP Management to a monthly fee of 3% of the debtor's gross monthly revenue "as determined by the monthly reports filed in the Bankruptcy Case";[5] and

---

[1] Doc. #1.

[2] Doc. ##69, 98.

[3] *See* Doc. #71 ¶¶ 1, 2.1, 3.1.

[4] *Id.* ¶ 3.2.

[5] *Id.* ¶ 4.2.

- committed VIP Management to providing Mobile Addiction with all the information reasonably required for the debtor to file its monthly operating reports in this bankruptcy.[6]

On September 6, Mr. Thomas, the owner, appeared on Mobile Addiction's behalf at the § 341 meeting of creditors. He testified that the debtor's goal was to sell the company within 60 days. Mr. Thomas also stated that Mr. Long and Lisa Quick, the company's in-house accountant, would prepare the monthly operating reports that come due during the case.

Mobile Addiction has needed two extensions of the initial cash collateral order.[7] In addition to its chapter 11 counsel, it has engaged the law firm Adrian & Pankratz for negotiations of its real-estate leases.[8] Of the 115 retail stores that were turned over to VIP Management, Mobile Addiction has rejected the leases to 39.[9] It has obtained one extension of the exclusivity period for filing a chapter 11 plan and disclosure statement,[10] and it has filed a motion seeking

---

[6] *Id.* ¶ 5.6.

[7] Doc. ##96, 132.

[8] *See* Doc. ##17, 74.

[9] Doc. ##91, 102.

[10] Doc. #120.

another extension.[11] Otherwise, the case appears to have made little substantive progress.

The Court held a status conference in this case on October 24. There, Mobile Addiction's counsel acknowledged that the debtor had not filed any monthly operating reports but requested additional time, to November 7, to catch up. Mobile Addiction's counsel also said that the debtor would file a sale motion by the end of the year. As of the date of this motion, however, the debtor still has not filed any operating reports or anything demonstrating progress toward a sale or a reorganization.

## Argument

The Bankruptcy Code requires a court, upon a finding of cause, to convert a chapter 11 case to chapter 7 or to dismiss the case.[12] The Code lists several grounds for cause, but the list is not exhaustive.[13] A court may consider other grounds as they arise and may use its

---

[11] Doc. #128.

[12] 11 U.S.C. § 1112(b)(1).

[13] *Id.* § 1112(b)(4).

equitable powers to reach an appropriate result.[14] Among the items specifically defined to substantiate cause are:

- unexcused failure to satisfy timely any filing or reporting requirement established by Title 11 or by any rule applicable to a case under chapter 11;[15]

- substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.[16]

Both conditions are present here; therefore, cause exists under § 1112(b). Conversion would serve little purpose and would be administratively burdensome given the posture of the case, so dismissal is the most suitable remedy.

### A. Mobile Addiction has failed to file a single operating report during this case.

Under § 1112(b)(4)(F), an unexcused failure to report or file required information constitutes cause for dismissal or conversion. Section 704(a)(8)—made applicable in chapter 11 by §§ 1106(a)(1) and 1107(a), and by Bankruptcy Rule 2015(a)(3)—requires a debtor-in-

---

[14] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *21 (Bankr. D. Kan. Dec. 21, 2015).

[15] 11 U.S.C. § 1112(b)(4)(F).

[16] *Id.* § 1112(b)(4)(A).

possession to file periodic financial reports. Failure to file these reports impairs the ability of the Court, creditors, and other interested parties to monitor the debtor's operations. Nor can the United States Trustee fulfill its statutory duty to supervise the administration of the chapter 11 case.[17] Without the reports, it is impossible to determine whether the debtor has—among other things—remained current on post-petition obligations, including taxes and payroll; made improper payments to professionals; or paid the correct quarterly fee payable under 28 U.S.C. § 1930(a)(6).

Mobile Addiction has been in bankruptcy for more than five months but has filed zero monthly operating reports. It is severely delinquent in submitting the reports for July through November 2019, and the December report will come due on January 21. To put it another way, Mobile Addiction has conducted business—or, more accurately, allowed its primary creditor to conduct the business—in total opacity while enjoying the protections of bankruptcy. This state of affairs is anathema to the bankruptcy system, which runs on

---

[17] 28 U.S.C. § 586(a)(3).

transparency. It pre-empts the Court, creditors, and the United States Trustee from accurately and promptly gauging the debtor's financial situation, the sustainability of the business, the debtor's ability to stay within budget, and whether the debtor has complied with the panoply of requirements in the Code and the Rules. Even if Mobile Addiction has not deliberately concealed information, it still has a responsibility to file complete and accurate reports; it has failed entirely because it has filed no reports whatsoever. Accordingly, cause for dismissal or conversion exists under § 1112(b)(4)(F).

**B. The precious little information that the debtor has provided to the Court depicts an estate in decline, with little hope of rehabilitation.**

Under § 1112(b)(4)(A), a court must convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. The two components that courts test are (1) whether, after the commencement of the case, the debtor continues to experience a negative cash flow or declining asset values; and (2) whether there is any reasonable likelihood that the debtor or some other party will be able to stem the

debtor's losses and place the enterprise back on a solid financial footing within a reasonable amount of time.[18]

Here, Mobile Addiction has shed about a third of its retail leases but has accomplished nothing else of substance. No sale materialized in the time that the debtor promised. Multiple extensions have been required to continue the status quo of operations. And yet any evaluation of those operations is hindered by the debtor's failure to file a single operating report—which, in turn, calls into serious question the efficacy of a management agreement that specifically provided a mechanism for compliant reporting. These circumstances certainly do not reflect an efficient enterprise making tangible progress toward rehabilitation. The only information made available to the Court in this case depicts a debtor in decline and disarray. Under § 1112(b)(4)(A), then, cause exists for dismissal or conversion.

## C.  **Dismissal is the most appropriate remedy.**

Because cause exists, this Court must convert or dismiss the case. The choice hinges on the best interests of creditors and the

---

[18] *In re Western States, Inc.*, No. 17-20041, 2018 Bankr. LEXIS 247, at *13 (Bankr. D. Wyo. Jan. 30, 2018) (citations omitted).

estate. Although the Code does not define it, the standard "implies a balancing test to be applied through case-by-case analysis."[19]

Dismissal is the most compelling option here. Conversion would saddle a chapter 7 trustee with the Herculean task of taking over a large retail enterprise from a debtor that effectively hasn't been a debtor-in-possession for months. In addition to the logistical complications of marshaling the estate assets and untangling the arrangement with VIP Management, the trustee would have to assume significant liability as an employer to scores of retail workers spread among several states. And the trustee would inherit responsibility for ameliorating the administrative defects in this case, including the delinquent reports. Rather than further delay creditors' ability to advance their interests outside of bankruptcy, this Court should simply dismiss the case as too far gone.

## Conclusion

Right out of the dock, Mobile Addiction surrendered the helm. But this case does not seem to have helped the debtor right the ship;

---

[19] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28 (Bankr. D. Kan. Dec. 21, 2015) (citations omitted).

rather, the debtor appears to be rudderless, adrift. It has breached its most fundamental reporting obligations, preventing the Court, the United States Trustee and any interested party from assessing the debtor's operations. By any available measure, this debtor seems to have only lost momentum. Ample cause exists under § 1112(b), and this Court should dismiss the case.

> ILENE J. LASHINSKY,
> UNITED STATES TRUSTEE
>
> By: <u>Christopher T. Borniger</u>, No. 24692
> Trial Attorney
> 301 N. Main St., Suite 1150
> Wichita, KS 67202
> 316-269-6216 (phone)
> 316-269-6182 (fax)
> <u>Christopher.T.Borniger@usdoj.gov</u>

## CERTIFICATE OF SERVICE

I certify that on January 15, 2020, a true and correct copy of this **Motion to Dismiss** was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in this case through the CM/ECF system.

> By: <u>Christopher T. Borniger</u>