HINKLE LAW FIRM LLC
1617 N. Waterfront Pkwy, Suite 400
Wichita, Kansas 67206-6639
(316) 267-2000 / (316) 264-1518, facsimile

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| MOBILE ADDICTION, LLC, | Case No. 19-11449 |
| *Debtor*. | Chapter 11 |

## DEBTOR MOBILE ADDICTION, LLC'S AMENDED
## PLAN OF REORGANIZATION DATED APRIL 8, 2020

Pursuant to 11 U.S.C. § 1121(a), the Debtor Mobile Addiction, LLC hereby submits as proponent its Amended Plan of Reorganization Dated April 8, 2020.

## ARTICLE I.  INTRODUCTION

This Amended Plan provides for the reorganization of the Debtor, its continued operation with current management, and the full payment of all Allowed Claims, including Secured Claims, Unsecured Priority Claims, and Unsecured Nonpriority Claims. The current Interest Holder, Charles R. Thomas, shall retain his Interest in the Debtor, but new management will take over operations and limitations on Membership Distributions and salary will be implemented.

Subject to the restrictions on modifications set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtor expressly reserves the right to alter, amend or modify the Amended Plan, one or more times, before its substantial consummation.

**All holders of Claims against, and Interests in the Debtor are encouraged to read the Amended Plan, the Amended Disclosure Statement and related materials in their entirety before voting to accept or reject the Amended Plan.**

## ARTICLE II.  DEFINITIONS

For the purpose of this Amended Plan, the following terms when used in this Amended Plan shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**2.1** **Administrative Claim** shall mean an administrative expense which is entitled to priority pursuant to 11 U.S.C. §507(a)(2) of the Bankruptcy Code and allowed under 11 U.S.C. §503 of the Bankruptcy Code.

**2.2** **Administrative Claim Bar Date** shall have the meaning set forth in Article 4.2.1 of the Amended Plan.

**2.3** **Allowed Claim** shall mean a Claim (a) in respect of which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by the Court and by Rule 3003, or (b) that has appeared or hereafter appears in the Debtor's bankruptcy schedules and in the list of creditors prepared and filed with the Court under § 521(1) of the Bankruptcy Code and is not scheduled or listed as disputed, contingent or unliquidated as to amount, and in either alternative, as to which no objection to the allowance thereof has been filed, allowed and become a Final Order. Allowed Claim shall not include interest on the principal amount of such claim(s) subsequent to the Petition Date, except as may be otherwise provided herein. Allowed Claim shall not include any Administrative Claim.

**2.4** **Allowed Ad Valorem Tax Claims** shall mean any Allowed Claim for personal property or other statutory taxes, including without limitation any interest and penalties due thereon, that operate as a lien on the Debtor's personal property by operation of state statute. All Allowed Ad Valorem Tax Claims are set forth on Schedule 2, attached.

**2.5** **Allowed Priority Tax Claims** shall mean any Allowed Claim for taxes, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code. All Allowed Priority Tax Claims are set forth on Schedule 1, attached.

**2.6** **Allowed Unsecured Claims** shall mean Allowed Claims that are not Secured Claims, Allowed Priority Claims or Administrative Convenience Class Claims. Allowed Unsecured Claims are set forth on Schedule 3, attached.

**2.7** **Amended Disclosure Statement** shall mean the Debtor's Amended Disclosure Statement Submitted in Conjunction with the Debtor Mobile Addiction, LLC's Amended Plan of Reorganization dated April 8, 2020 in its present form or as such Amended Disclosure Statement may be amended, modified or supplemented.

**2.8** **Amended Plan** shall mean this Debtor's Amended Chapter 11 Plan of Reorganization dated April 8, 2020, and all exhibits and schedules attached hereto, in its present form or as it may be amended, modified or supplemented in accordance with the terms hereof or in accordance with the Bankruptcy Code and Bankruptcy Rules.

**2.9** **Assets** shall mean all of the Debtor's property of the estate as of the Effective Date as defined in § 541 of the Bankruptcy Code.

**2.10** **Avoidance Actions** shall mean any and all claims and causes of action of the Debtor as of the Effective Date, arising under the Bankruptcy Code, including, without limitation, Sections 544 through 551 and 553 thereof.

**2.11** **Ballot** shall mean the form or forms that will be distributed along with the Amended Disclosure Statement to the holders of Allowed Claims in Classes that are Impaired under the Amended Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Amended Plan.

**2.12** **Bankruptcy Case** shall mean the Debtor's bankruptcy, case number 19-11449 in the Bankruptcy Court.

**2.13** **Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, *et. seq.*, as now in effect or hereafter amended.

**2.14** **Bankruptcy Court or Court** shall mean the United States Bankruptcy Court for the District of Kansas in which the Bankruptcy Case is pending and includes the United States Bankruptcy Judge sitting in this case.

**2.15** **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, in accordance with the provisions of 28 U.S.C. § 2075, as now in effect or hereafter amended, and the Local Rules of the Bankruptcy Court, as now in effect of hereafter amended.

**2.16** **Bar Dates** shall mean the Claims Bar Date and the Rejection Claim Bar Date.

**2.17** **Business Day** shall mean any day other than a Saturday, Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006.

**2.18** **Cash** shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks, and other readily marketable direct obligations of the United States of America.

**2.19** **Claim** shall have the meaning as set forth in § 101(5) of the Bankruptcy Code, whether or not asserted, and includes any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**2.20** **Claim Bar Date** shall mean December 2, 2019.

**2.21** **Class** shall mean any class into which Allowed Claims are classified pursuant to Article III of this Amended Plan.

**2.22** **Confirmation** shall mean the entry of the Confirmation Order on the docket in the Bankruptcy Case.

**2.23** **Confirmation Date** shall mean the date the Confirmation Order is entered on the docket in the Bankruptcy Case.

**2.24** **Confirmation Order** shall mean the order of the Bankruptcy Court confirming the Amended Plan pursuant to § 1129 of the Bankruptcy Code.

**2.25** **Creditor** shall mean any Person that holds a Claim against the Debtor which arose prior to the Filing Date. Continental

**2.26** **Cure Amount** shall mean the amount of money that must be paid to the holder of an executory contract or unexpired lease as of the Confirmation Date to Cure such contract or lease.

**2.27** **Cure or Cured** shall mean, with respect to any default, actual or alleged, of an agreement, promissory note, or other Instrument, all such defaults are corrected and eliminated such that there shall be no existing default.

**2.28** **Debtor** shall mean Mobile Addiction, LLC, a Texas limited liability company, the Debtor in this Bankruptcy Case.

**2.29** **Door or Doors** shall mean a retail location of the Debtor.

**2.30** **Effective Date** shall be the later of (a) the date 30 days after the Confirmation Date, or (b) the date the Confirmation Order becomes a Final Order.

**2.31** **Entity** shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

**2.32** **Estate** shall mean the estate created for the Debtor in the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

**2.33** **File, Filed, or Filing** shall mean file, filed, or filing with the Bankruptcy Court in accordance with its respective procedures.

**2.34** **Filing Date** shall mean July 31, 2019, the date on which the Debtor filed the Bankruptcy Case.

**2.35** **Final Cash Collateral Order** shall mean the "Final Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection," Doc# 60, Filed in the Bankruptcy Case on August 26, 2019 and any extensions or renewals thereof.

**2.36** **Final Order** shall mean an order or a judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (a) no appeal, certiorari proceeding or other review or rehearing has been requested or is still pending, and (b) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired.

**2.37** **Impaired** shall have the meaning set forth in § 1124 of the Bankruptcy Code.

**2.38** **Interest** shall mean, with respect to the Debtor, any legal or equitable interest in the Debtor, including any ownership interest or right to acquire any ownership interest in the Debtor.

**2.39** **Instrument** shall mean an agreement, promissory note, mortgage, security agreement, financing statement, or any other writing that evidences a right to payment of a monetary obligation.

**2.40** **Member Distributions** shall mean distributions of the Debtor's profits to its members.

**2.41** **Person** shall include a natural person or any Entity.

**2.42** **Petition Date** shall mean July 31, 2019, the date on which the Debtor filed the Bankruptcy Case.

**2.43** **Professionals** shall mean those Persons or Entities (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code.

**2.44** **Property** means all property specified in § 541 of the Bankruptcy Code and all property, real or personal, tangible or intangible, acquired by the Debtor after the Filing Date and up to the Effective Date. Property excludes the consigned cell phones, which are owned by VIP Management, Inc.

**2.45** **Pro Rata** shall mean, with respect to the holders of Allowed Claims that vote for the Amended Plan, the quotient of the amount of a single creditor's Allowed Claim in a particular Class divided by the total amount of all creditors' Allowed Claims voting in that Class.

**2.46** **Replacement Note** means the promissory note to be executed by the Debtor and delivered to VIP Wireless as provided in this Amended Plan.

**2.47** **Rejection Claim Bar Date** means the later of (a) the Claims Bar Date or (b) 30 days after the date of the entry of an order authorizing the rejection of an executory contract or unexpired lease.

**2.48** **Released Parties** shall have the meaning specified in Article 9.6 of the Amended Plan.

**2.49** **Secured Claim** shall mean that portion of a Claim that is secured by a properly perfected lien on Property.

**2.50** **Thomas** shall mean the Debtor's sole member, Charles R. Thomas.

**2.51** **Unimpaired** shall mean any Claim that is not Impaired within the meaning of § 1124 of the Bankruptcy Code.

All terms not expressly defined herein shall have the respective meanings given to such terms in § 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply. Further, in computing any period of time prescribed or allowed by the Amended Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Unless otherwise specified in the Amended Plan, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

### ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1** **General Rules of Classification.** Generally a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class, but portions may be included in both Classes.

**3.2     Classes of Claims and Interests.** The following is the designation of the Classes of Claims and Interests under the Amended Plan.

**3.2.1     Class 1** shall consist of Allowed Administrative Claims.

**3.2.2     Class 2** shall consist of VIP Wireless, Inc.'s claim for cell phones consigned to the Debtor. This Class does not consist of VIP Wireless's secured claim related to the Forbearance Agreement.

**3.2.3     Class 3** shall consist of the Allowed Priority Tax Claims. See the list of Allowed Priority Tax Claims attached as Schedule 1.

**3.2.4     Class 4** shall consist of the Allowed Secured Claim of VIP Wireless, Inc.

**3.2.5     Class 5** shall consist of the secured claim of the State of Texas for Claim No. 34.

**3.2.6     Class 6** shall consist of Allowed Ad Valorem Tax Claims owed to several counties and municipalities in relation to several Doors in Texas. See the list of Allowed Ad Valorem Tax Claims attached as Schedule 2.

**3.2.7     Class 7** shall consist of Allowed Unsecured Claims. See the list of Allowed Unsecured Claims attached as Schedule 3.

**3.2.8     Class 8** shall consist of all Interests in the Debtor.

### ARTICLE IV. TREATMENT OF UNIMPAIRED CLAIMS

**4.1     Class 1 – Allowed Administrative Claims.** This Class is not Impaired and therefore not entitled to vote on the Amended Plan. Except to the extent that the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall receive in respect of such Allowed Claim the full amount of the Allowed Administrative Claim in cash on the later of (a) the Effective Date, or (b) the date on which such Administrative Claim becomes an Allowed Claim.

**4.2.1     Bar Date for Administrative Claims.** Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims for the period from the Filing Date to the Effective Date must be Filed and served on the Debtor's counsel no later than the date that is 60 days after the Effective Date (the "**Administrative Claim Bar Date**"). Any Person who is required to File and serve a request for payment of an Administrative

Claim and fails to timely File and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Amended Plan on account thereof.

**4.2.2  Deadline to file Objections to Administrative Claims.** Any objections to requests for payment of Administrative Claims must be Filed and served on the requesting party and its counsel, if any, no later than the date that is 90 days after the Effective Date, unless extended by the Bankruptcy Court.

**4.2.3  <u>Administrative Expenses for Certain Utility Claims</u>. The Debtor proposes to pay certain claims for utility services provided within the 20 days before the Petition Date as Allowed Administrative Claims without requiring those Claimants to file proofs of claim under this Class. A list of those creditors and the amounts to be paid are attached as Schedule 4.**

**4.3  Class 2 – VIP Wireless's Consignment Claim**. This Class is not Impaired and therefore not entitled to vote on the Amended Plan. This Class consists of VIP Wireless, Inc.'s ("VIP Wireless") claim for the cell phone inventory consigned to Mobile Addiction that is not part of VIP Wireless's Secured Claim. In VIP Wireless' Proof of Claim, the amount of this claim was $3,707,018.37. Mobile Addiction will continue to pay VIP Wireless on a weekly basis after the cell phones have sold. If the cell phones remain in inventory more than 90 days, Mobile Addiction will purchase those cell phones for their wholesale price.

## ARTICLE V. TREATMENT OF IMPAIRED CLAIMS AND INTERESTS

**5.1  Class 3 – Allowed Priority Tax Claims.** This Class is Impaired and is entitled to vote on the Amended Plan. Except to the extent the holder of an Allowed Claim in Class 3 agrees otherwise, each holder of an Allowed Priority Tax Claim shall be paid over a term of 60 months in equal monthly installments with interest rate of 4.75%. Payments of $12,330.90 shall commence on the Effective Date and on the same day each month thereafter for 59 consecutive months.

**5.2  Class 4 – Allowed Secured Claim of VIP Wireless.** This Class is Impaired and is entitled to vote on the Amended Plan. The Allowed Secured Claim of VIP Wireless shall be paid in full in monthly installments commencing on the first day of the month following the month in which the Effective Date occurs. Monthly payments shall be made on the basis of an amortization period of 7 years with interest at 4.75% per annum, which makes the monthly payment to VIP Wireless $79,208.64. The full balance of such claim shall be paid with the 84th payment.

**5.2.1 VIP Wireless's Retention of Liens.** VIP Wireless shall retain the liens it has that secure its claim as well as the personal guaranties provided by the Interest Holder. VIP Wireless shall be authorized to file such documents and take such action as is reasonably necessary under Kansas law to preserve its lien rights (e.g. filing renewal statements, if necessary, etc.).

**5.2.2 VIP Wireless's Payments Pending Effective Date.** During the pendency of the Filing of the Amended Plan and the Effective Date, the Debtor shall pay VIP Wireless as required by the Final Cash Collateral Order.

**5.2.3 Cancellation of the Forbearance Agreement and Curing Defaults.** On the Effective Date, the Forbearance Agreement executed on February 18, 2019 shall be cancelled and deemed null, void and of no force or effect. The holders of or parties to the Forbearance Agreement will have no rights arising from or relating to the Forbearance Agreement, except the rights established by the Amended Plan as provided in the Confirmation Order. As of the Effective Date, any existing or alleged defaults under the terms of any of the Forbearance Agreement shall be deemed Cured.

**5.2.4 Execution of Replacement Note.** Within 14 days after the Effective Date, the Debtor shall execute and deliver to VIP Wireless the Replacement Note in the principal amount of VIP Wireless' Allowed Secured Claim as of the date the Replacement Note is executed, including unpaid principal, accrued and unpaid interest as of the date the Replacement Note is executed, and VIP Wireless' reasonable attorneys' fees incurred in this Bankruptcy Case. The terms and conditions of the Replacement Note shall be established by the Amended Plan as provided in the Confirmation Order and shall govern the Debtor's and VIP Wireless' rights under the Amended Plan.

**5.3 Class 5 – Allowed Secured Claims of the State of Texas –** This Class is Impaired and entitled to vote on the Amended Plan. Before the Petition Date, Mobile Addiction had a compromise and settlement agreement with the Texas Comptroller's Office – State of Texas regarding taxes that Mobile Addiction was unaware it had to collect from customers. This compromise required Mobile Addiction to pay $15,000.00 a month for 48 months. If Mobile Addiction had made all those payments, any balance not paid through the agreement would have been forgiven.

However, Mobile Addiction defaulted on this compromise prepetition and is not in a financial position to simply pick up the agreement and pay the remaining 27 payments in the 27 months after the Effective Date. Instead, Mobile Addiction is going to pay the entire claim in the amount of $681,671.05 over 7 years at 6.5% interest in equal monthly installments of $10,122.43. Payments shall commence on the day that is 30 days after the Effective Date and on

the same day each month thereafter for 83 consecutive months. The State of Texas shall retain the liens it has that secure this claim as well as the personal guaranties provided by Thomas. The State of Texas shall be authorized to file such documents and take such action as is reasonably necessary under Texas law to preserve its lien rights (e.g. filing renewal statements, if necessary, etc.).

**5.4 Class 6 – Allowed Secured Claims for Ad Valorem Taxes -** This Class is Impaired and is entitled to vote on the Amended Plan. Except to the extent the holder of an Allowed Claim in Class 6 agrees otherwise, each holder of an Allowed Ad Valorem Tax Claim shall be paid over a term of 7 years with interest at the rate of 4.75% per annum. Equal monthly payments of $84.45 shall commence on the day that is 30 days after the Effective Date and on the same day each month thereafter for 83 consecutive months. Each monthly payment will be distributed Pro Rata to claims in this Class.

**This Class does not include the claim of Harris County, which filed Claim No. 40 in the amount of $17,808.02 for ad valorem taxes owed on several Doors located in Harris County. Mobile Addiction sold those Doors prepetition and the taxes included in Claims No. 40 are associated with personal property that Mobile Addiction no longer owns. Therefore, Mobile Addiction asserts that it not liable for this claim.**

**Additionally, Claim No. 60 is duplicative of Claim No. 40. As such, Claim No. 60 will be disallowed by the confirmation of the Amended Plan.**

**5.5 Class 7 – Allowed Unsecured Claims.** This Class is Impaired and is entitled to vote on the Amended Plan. Except to the extent the holder of an Allowed Claim in Class 7 agrees otherwise, each holder of an Allowed Unsecured Claims in Class 7 shall be paid in full with monthly payments distributed Pro Rata among the Allowed Class 7 Claims over a term of 7 years with interest at 4% per annum. The monthly payments shall commence on the day that is 30 days after the Effective Date and on the same day of each month thereafter until all the Class 7 claims are paid in full with interest as provided herein. The projected minimum monthly payment will be at least $24,790.38.

**This Class includes claims of certain landlords that received security deposits from the Debtor for leases on Doors the Debtor closed prepetition and that the Debtor subsequently rejected in this Bankruptcy Case. The Debtor proposes that those landlords retain those security deposits and apply them to reduce their claims. Several of landlords that fit this criterion filed secured claims based on their retention of those security deposits. A list of those landlords is attached to this Amended Plan as Schedule 5. The Debtor proposes that upon confirmation of this Amended Plan the landlords identified in Schedule 5 apply the security deposits to reduce their claims and contrary to their filed proof of claims be treated as general unsecured creditors for the remaining balance.**

**5.6    Class 8 - Interest Holder.** This Class is Impaired and is entitled to vote on the Amended Plan. Thomas shall retain this Interest in the Debtor except as modified in Article 6 of the Amended Plan.

## ARTICLE VI. MEANS OF IMPLEMENTING THE AMENDED PLAN

**6.1    Sale or Closing of Certain Doors.** Attached as Schedule 6 is a list of Doors where historically the costs associated with operating the Door exceeds the sales on a monthly basis. As part of this Amended Plan, the Debtor will market the Doors for sale for a period of 60 days. The Debtor will do so under the provision of 11 U.S.C. § 363. Any such sale will be free and clear of all liens, claims, or encumbrances. After the expenses of the sale are deducted, the proceeds from any such sale will be used to first pay Pro Rata any Allowed Administrative Claim until such claims are paid in full and then to VIP Wireless's Class 4 secured claim. However, if an adequate purchase price is not obtained by the Debtor within that 60 days, the Debtor will promptly close any such Door including terminating the employees of the Door and returning any consigned inventory to VIP Wireless. Any unexpired lease to any Door closed under this Section or corresponding motion filed by the Debtor will be rejected automatically and the landlord of any such Door will be entitled to make a claim for any Rejection Damages provided for under Section 7.3 and 7.4 of this Amended Plan.

**6.2    Continued Existence and Operation of the Debtor.** The Debtor shall continue its existence and operations under the existing Articles of Organization and Operating Agreement, except as modified in the Amended Plan. To the extent the Articles of Organization or the Operating Agreement are construed to be executory contracts under § 365 of the Bankruptcy Code, the Debtor hereby accepts both.

**6.3    Termination of Management Agreement with VIP Management MA LLC.** The confirmation of this Amended Plan shall constitute written notice to VIP Management MA LLC under Section 6.2 of the Management Agreement of Mobile Addiction's intent to terminate the Management Agreement. Therefore, 30 days from the Effective Date of the Amended Plan, the Management Agreement with VIP Management will be terminated and VIP Management will be required to deliver to Mobile Addiction copies of all books, records, contracts, leases, files, and correspondence relating to the Doors under Section 6.3 of the Management Agreement. Mobile Addiction expressly reserves the right to enforce the provisions of this Amended Plan and Section 6.3 of the Management Agreement in the Bankruptcy Court, including, but not limited to seeking an order or judgment of turnover of those records and functions under the Bankruptcy Code.

**6.4    New Management.** Upon confirmation of this Amended Plan, the following change in Mobile Addiction's Management will take place:

(a) **Termination of Management Agreement and Appointment of New Manager.** Upon the termination of the Management Agreement (whether through confirmation of this Amended Plan or the granting of the Committee's motion to vacate the Management Agreement), the Debtor's day-to-day operations will be taken over by Bill Long, Mobile Addiction's current Direct of Operations. Long will be deemed the Manager of Mobile Addiction, but Long will not become a member or receive a membership interest in the reorganized Debtor. Long's salary will be increased commiserate with his increase in responsibility for the Debtor's operation.

(b) **Retention of Interest.** Upon confirmation of this Amended Plan, Thomas will no longer be involved with the day-to-day operations of the Debtor. Thomas will continue to oversee and supervise Long regarding major financial decisions and transaction of the Debtor along with Ashraf Salman as provided below. Long will be entitled to a salary commiserate with the salary received by Thomas before Debtor filed its Bankruptcy Case.

(c) **Granting of Membership Interest to Ashraf Salman.** Salman is the owner of and operates Citywide Wireless, which maintains an unsecured claim against the Debtor. Salman maintains numerous contacts in the pay-as-you-go cell phone industry and has access to inventory and services not currently available to the Debtor. To tap into those resources, upon confirmation of this Amended Plan, the Debtor will grant Salman a 50% membership interest in the reorganized Debtor. Salman will assist Thomas in overseeing and supervising Long regarding major financial decisions and transactions involving the reorganized Debtor. Thomas and Salman will have equal voting rights.

(d) **Compensation for Thomas and Salman.** As equal members in the reorganized Debtor, Thomas and Salman will be each entitled to a draw of $6,000.00 a month from the reorganized Debtor. Any draw received by Thomas and Salman shall be equal and will not exceed in any given month any compensation provided to Long. As set forth in Section 6.5 below, no distributions will be made by the reorganized Debtor except to enable Thomas and Salman to pay income tax on the draws they receive.

(e) **Further Equity Interest.** Long will not receive any equity interest in the Debtor and will not become a member of the Debtor pursuant to this Amended Plan. However, nothing in this Amended Plan will prohibit Long from becoming a member of the Debtor after the Effective Date of this Amended Plan provided that the terms of the Debtor's Operating Agreement are properly followed.

**6.5      Limitation on Member Distributions and Management's Salaries.** Until all Allowed Claims are paid in full as provided in the Amended Plan, Thomas and Salman shall take no Member Distributions except as may be necessary to pay income taxes.

**6.6      Revesting of Assets.** On and after the Effective Date, all Property of the Estate, wherever located, shall revest in the Debtor free and clear of all claims, liens, charges and other encumbrances except as established by the Amended Plan as provided in the Confirmation Order.

**6.7      Authorization to Pursue Chapter 5 Avoidance Actions.**

**(a)**      Upon the entry of the Confirmation Order, the Committee will not dissolve, but will be vested with the authority to bring any causes of action under 11 U.S.C. § 547, 11 U.S.C. § 548, and the Kansas Uniform Fraudulent Transfers Act ("KUFTA") for recovery for the unsecured creditors.  The attorney fees and expenses incurred by counsel retained by the Committee after the Effective Date of the Amended Plan and in pursuit of these Chapter 5 Avoidance Actions and KUFTA claims shall be paid from the funds recovered under those actions.  Any fees and expenses incurred by Committee Counsel before the Effective Date of the Amended Plan will be paid as an Administrative Claim under Section 4.1 of this Amended Plan.  After the payment of any fees and expenses of the counsel retained by the Committee to pursue any Chapter 5 Avoidance Actions and KUFTA claims, the remaining proceeds from the recovery will be distributed Pro Rata to Allowed Unsecured Claims.  Any such payment will decrease the Debtor's obligation to pay the Allowed Unsecured Claims.

**(b)**      The Committee's obligation to investigate and pursue any Chapter 5 Avoidance Actions and KUFTA claims is tolled provided that the Debtor is current on its obligations to pay Allowed Unsecured Creditors under this Amended Plan.  If the Debtor defaults on its obligations set forth in this Amended Plan or is otherwise unsuccessful in completing the terms of its Amended Plan, the Committee is authorized to reopen this Bankruptcy Case and upon the reopening, investigate and bring any causes of action under 11 U.S.C. § 547, 11 U.S.C. § 548, and the KUFTA for recovery for the unsecured creditors as contemplated by the Amended Plan. Thomas further agrees to waive any statute of limitations on any such causes of action that might run before the Committee takes any action contemplated under this Section and this Amended Plan.  Upon confirmation of this Amended Plan, Thomas agrees to execute any documents necessary to memorialize his waiver of the statute of limitations associated with any Chapter 5 Avoidance Actions or recovery under the KUFTA.

**6.8     Interest Holder:** Thomas is the sole member of the Debtor and therefore is the only equity holder. Thomas intends to retain his interest in the Debtor as part of this Amended Plan.

If the Debtor is unable to obtain a consensual confirmation of this Amended Plan under 11 U.S.C. § 1129(a) and the Debtor is required to seek a contested confirmation under 11 U.S.C. § 1129(b), Thomas and Salman will each contribute $12,500.00, for a total of $25,000.00, which will constitute "new value". This payment will be considered Thomas's initial offer to maintain equity in the Debtor and Salman's initial offer to obtain an equity interest in the Debtor. As set forth above, the genesis of this equity purchase will be Thomas and Salman's personal assets and not come from the Debtor. This offer will be pursuant to the holding of *In re Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership,* 526 U.S. 434, 119 S. Ct. 1411 (1999).

Any creditor or party in interest may additionally offer to purchase all equity in the Debtor's business. In the event other parties or creditors in interest offer to purchase the equity, a "bid off" or "auction" of the equity shall occur at the confirmation hearing. The bidding procedures proposed for the auction sale of the New Equity Interests Property are as follows:

**(a)     Equity Offer.** The $25,000 payment set forth above is Thomas and Salman's initial offer of new value. This new value will be injected by Thomas and Salman into the Debtor by the Effective Date of this Amended Plan and will be distributed as set forth above to Administrative Claims, then to Allowed Priority Tax Claims, and to other Allowed General Unsecured Claims.

**(b)     Overbid.** Any initial overbid for purchase of the equity must be an initial overbid in the sum of $50,000.00. Any subsequent bid must be in the minimum amount of $25,000.00.

**(c)     Bid Deadline.** Any overbids by any creditors or parties in interest that meet the requirements of Section 6.8(b) must be submitted to the Debtor's counsel seven (7) days before the initial confirmation hearing on the Amended Plan. Any overbid must be submitted in writing and delivered to the Debtor's Counsel in the same manner creditors or parties in interest submit ballots under the Amended Disclosure Statement. The Debtor can request assurance that any bidding creditor or party in interest deposit funds in the Debtor's Debtor-in-Possession account with INTRUST before the initial confirmation hearing on the Amended Plan.

**6.9** **Substantial Consummation.** Substantial Consummation of the Amended Plan shall occur when the Confirmation Order becomes a Final Order and 3 consecutive months of payments to creditors as required by the Amended Plan have been made by the Debtor.

## ARTICLE VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1** **Acceptance of Unexpired Leases and Executory Contracts.** As of the Effective Date, and subject to payment of any Cure Amount due, the Debtor accepts the following unexpired leases and executory contracts:

**7.1.1** All unexpired leases for the Doors Mobile Addiction seeks to retain in through this Amended Plan, identified in Schedule 7.

**7.1.2** All executory contracts and leases previously accepted by Final Order in the Bankruptcy Case.

**7.1.3** All of the Debtor's employees' employment agreements as of the Confirmation Date, including, but not limited to employee benefit plan agreements.

**7.1.4** All contracts the Debtor has with health insurance, life insurance and other benefit providers related to employee benefit plans as of the Confirmation Date.

**7.1.5** All policies of insurance owned by the Debtor as of the Confirmation Date, including health, liability, property and casualty, and directors and officers policies.

**7.2** **Establishing the Cure Amount.** To the extend a landlord believes there is an amount of pre-petition rent that is owed, each landlord shall be paid in cash such Cure Amount on the later of (a) the Effective Date, or (b) the date on which such Cure Amount becomes allowed under this Section.

**7.2.1** **Bar Date for Cure Amount.** Unless otherwise ordered by the Bankruptcy Court, requests for payment of any amount necessary to cure any prepetition rent necessary to Mobile Addiction's pre-petition lease obligation must be Filed and served on the Debtor's counsel no later than the date that is 90 days after the Effective Date (the "**Cure Amount Bar Date**"). Any Person who is required to File and serve a request for payment of an Cure Amount and fails to timely File and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Amended Plan on account thereof.

**7.2.2** **Deadline to file Objections to Cure Amount.** Any objections to requests for payment of Cure Amounts must be Filed and served on the requesting party and its counsel, if any, no later than 120 days after the Effective Date, unless extended by the Bankruptcy Court.

**7.3    Rejection of Unexpired Leases and Executory Contracts.** Any and all unexpired leases or executory contracts not previously rejected by the Debtor, unless expressly assumed pursuant to orders of the Bankruptcy Court prior to the Confirmation Date, shall be deemed rejected by the Debtor effective as of the Confirmation Date, but subject to the occurrence of the Effective Date.

**7.4    Proof of Claim for Rejection Damages.** All proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall, unless another order from the Bankruptcy Court provides for an earlier date, be Filed with the Bankruptcy Court on or before the Rejection Claim Bar Date. Unless otherwise permitted by a Final Order, any holder of such a Claim that does not File a timely Claim in accordance with this paragraph shall be forever barred from asserting such Claim against the Debtor, its Estate or Property.

## ARTICLE VIII. RETENTION OF JURISDICTION

**8.1    Retention of Jurisdiction by the Bankruptcy Court.** Following the Confirmation Date and until a final decree has been entered in this Bankruptcy Case, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

**8.1.1    Claims.** To determine the allowance, classification, or priority of all Claims, including Rejection Claims, if any, against the Debtor upon objection by any party in interest.

**8.1.2    Injunctions.** To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Amended Plan or its execution or implementation by any Person; to construe and take any other action to enforce and execute the Amended Plan, Confirmation Order, or any other order of the Bankruptcy Court; to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Amended Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Case on or before the Effective Date.

**8.1.3    Professional Fees.** To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, as provided in the Amended Plan.

**8.1.4    Dispute Resolution.** To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Amended Plan or the Confirmation Order.

**8.1.5 Executory Contracts and Unexpired Leases.** To determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases, and any other issues with respect to the assumption or rejection of such contracts and leases.

**8.1.6 Actions.** To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters brought in the Bankruptcy Case.

**8.1.7 General Matters.** To determine such other matters, and for such other purposes, as may be provided in the Amended Plan or the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code or requested by the Debtor.

**8.1.8 Plan Modifications.** To modify the Amended Plan under § 1127 of the Bankruptcy Code, to remedy any defect, cure any omission, or reconcile any inconsistency in the Amended Plan or the Confirmation Order so as to carry out its intent and purposes.

**8.1.9 Aid Consummation.** To issue such orders in aid of consummation of the Amended Plan and the Confirmation Order notwithstanding any otherwise applicable nonbankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code.

**8.1.10 Protect Property.** To protect the Property from adverse Claims or interference inconsistent with the Amended Plan, including to hear actions to quiet or otherwise clear title to such Property based on the terms and provisions of the Amended Plan.

**8.1.11 Implementation of the Confirmation Order.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, revoked, modified or vacated.

**8.1.12 Orders.** To resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation or enforcement of any orders entered by the Bankruptcy Court during the Bankruptcy Case.

**8.1.13 Final Decree.** To enter a final decree closing the Bankruptcy Case.

## ARTICLE IX. MISCELLANEOUS PROVISIONS

**9.1 Pre-Confirmation Modification.** On notice to and opportunity to be heard, the Amended Plan may be altered, amended or modified by the Debtor before the Effective Date as provided in § 1127 of the Bankruptcy Code.

**9.2    Post-Confirmation Immaterial Modification**.  After the Confirmation Date and prior to substantial consummation of the Amended Plan, the Debtor under § 1127(b) of the Bankruptcy Code, may institute proceedings in the Bankruptcy Court to remedy any defect, cure any omission or reconcile any inconsistencies in the Amended Plan, the Amended Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Amended Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**9.3    Withdrawal or Revocation of the Amended Plan**.  The Debtor reserves the right to revoke or withdraw the Amended Plan prior to the Effective Date. If the Debtor revokes or withdraws the Amended Plan, then the Amended Plan shall be deemed null and void.

**9.4    Payment of Statutory Fees**.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) and after Confirmation until a final decree is entered in the Bankruptcy Case.

**9.5    Successors and Assigns**.  The rights, benefits and obligations of any Person or Entity named or referred to in the Amended Plan shall be binding on, and shall inure to the benefit of the heirs, executors, administrators, successors and/or assigns of such Persons or Entities.

**9.6    Exculpation**.  Except as otherwise provided by the Amended Plan or the Confirmation Order, on the Effective Date, the Debtor and/or any of the Debtor's respective current or former members, officers, directors, employees, advisors, attorneys, business consultants, representatives, financial advisors, investment bankers, fund managers or agents and any of their successor or assigns (collectively, the "Released Parties") shall be deemed released by each of them against the other, and by all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Bankruptcy Case, including, without limiting the generality of the foregoing, all sales of Property, the Amended Disclosure Statement, the pursuit of approval of the Amended Disclosure Statement, the pursuit of Confirmation of the Amended Plan, the consummation of the Amended Plan or the administration of the Amended Plan or the Property to be distributed under the Amended Plan, except for acts or omissions which constitute willful misconduct, gross negligence, breach of fiduciary duty, or intentional fraud, and all such Persons, in all respects, shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Case and under the Amended Plan.

**9.7** **Injunction**. Except as otherwise provided in the Amended Plan or an order of the Bankruptcy Court, on and after the Confirmation Date, all Entities who have held, hold or may hold Claims against or Interests in Debtor are, with respect to any such Claims or Interests, permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forums) against or affecting the Debtor, the Property, or the Released Parties, or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against Debtor, the Property, or the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against Debtor, the Property, or the Released Parties, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due Debtor, the Property, or the Released Parties, or any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing Entities; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Amended Plan.

**9.8** **Satisfaction of Claims**. The treatment of and consideration to be received by the holders of Allowed Claims pursuant to this Amended Plan shall be in full satisfaction, settlement and release of such holders' respective Allowed Claims against the Debtor.

**9.9** **No Liability for Solicitation or Participation**. Pursuant to § 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Amended Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Amended Plan.

**9.10** **Term of Injunctions and Stays**. Unless otherwise provided herein or in another order of the Bankruptcy Court, all injunctions or stays provided for in the Bankruptcy Case pursuant to Sections 105, 362 and 524 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**9.11** **Cancellation of Instruments**. Unless otherwise provided for herein, on the Effective Date, all promissory notes, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim against Debtor shall represent only the right, if any, to participate in the distributions contemplated by this Amended Plan.

**9.12    Preservation of Insurance**.  The Debtor's release from and payment of Claims as provided in the Amended Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor (including, without limitation, its officers or directors) or any other Person or Entity.

**9.13    Cramdown**.  To the extent any Impaired Class of Claims entitled to vote on the Amended Plan votes to reject the Amended Plan, the Debtor reserves the right to request Confirmation of the Amended Plan under Section 1129(b) of the Bankruptcy Code with respect to such Class(es).

**9.14    Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, and except as otherwise provided herein, the rights and obligations arising under the Amended Plan shall be governed by and construed and enforced in accordance with the laws of the State of Kansas, without giving effect to rules governing the conflict of laws which would otherwise require the application of the law of another jurisdiction.

**9.15    Notices**.  Any notice required or permitted to be provided under the Amended Plan  shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier services, freight prepaid, to be addressed as follows:

Mobile Addiction, LLC
c/o Charles R. Thomas, Managing Member
918 E. Douglas
Wichita, KS 67213

with a copy to:

Nicholas R. Grillot
HINKLE LAW FIRM, LLC
1617 N. Waterfront Parkway, Suite 400
Wichita, KS 67206-6639
(316) 660-6211 / (316) 660-6523
Email: ngrillot@hinklaw.com

**9.16    Saturday, Sunday or Legal Holiday**.  If any payment or act under the Amended Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**9.17    Severability**.  If any term or provision of the Amended Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Amended Plan may, at Debtor's option, remain in full force and effect and not be deemed affected. However, the Debtor reserves the right not to proceed to Confirmation or consummation of the Amended Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Amended Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**9.18    Headings**.  The headings used in the Amended Plan are inserted for convenience only and neither constitute a portion of the Amended Plan nor in any manner affect the provisions of the Amended Plan.

**9.19    Preservation of Causes of Action**.  Unless otherwise provided for in this Amended Plan, the Debtor shall retain all rights and all causes of action accruing to the Debtor and its Estate, including but not limited to, those arising under Sections 505, 544, 547, 548, 549, 550, 551, 553 and 1123(b)(3)(B) of the Bankruptcy Code and the claims asserted in any pending civil action, and further including all tax setoff and refund rights arising under Section 505. Except as expressly provided in this Amended Plan or the Confirmation Order, nothing contained in this Amended Plan, including the release and exculpation provisions thereof, or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such rights or causes of action. Nothing contained in this Amended Plan, including the release and exculpation provision thereof, or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor has. The Debtor shall have, retain, reserve, and shall be entitled to assert, all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor has as fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any claims, cause of action, rights of setoff and other legal or equitable defenses that are not specifically waived or relinquished by this Amended Plan may be asserted after the Effective Date to the same extent as if the Bankruptcy Case had not been commenced.

## ARTICLE X.  CONFIRMATION REQUEST

10.1    The Debtor hereby requests Confirmation of this Amended Plan pursuant to §§ 1129(a) and (b) of the Bankruptcy Code.

RESPECTFULLY SUBMITTED,

HINKLE LAW FIRM, LLC

/s/ Nicholas R. Grillot
Nicholas R. Grillot, #22054
1617 N. Waterfront Pkwy, Ste. 400
Wichita, Kansas 67206-6639
(316) 660-6211 / (316) 660-6523
ngrillot@hinklaw.com
*Attorneys for Mobile Addiction, LLC*