**SO ORDERED.**

**SIGNED this 1st day of July, 2020.**



*Dale L. Somers*

Dale L. Somers
United States Chief Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

IN RE:

MOBILE ADDICTION, LLC,

      *Debtor*.

Case No. 19-11449
Chapter 11

## ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC'S
## AMENDED PLAN OF REORGANIZATION DATED APRIL 8, 2020

The Debtor Mobile Addiction, LLC ("Mobile Addiction") appears through its

Chief Operating Officer, Bill Long, and by and through its counsel Nicholas R.

Grillot of the Hinkle Law Firm, LLC.  VIP Wireless, Inc. ("VIP") appears by and

through its counsel Thomas J. Lasater of Fleeson, Gooing, Coulson & Kitch.  The

Unsecured Creditors' Committee ("Committee") appears by and through its attorney

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 2

David Prelle Eron of Eron Law, P.A.  The United States Trustee Ilene J. Lashinsky ("US Trustee") appears by and through her attorney Christopher T. Borniger.  There are no other appearances and none are necessary.

Mobile Addiction filed its Amended Plan of Reorganization Dated April 8, 2020 ("Amended Plan") on April 8, 2020.  *See* Doc# 207.  The Amended Plan was transmitted along with the Amended Disclosure Statement to all creditors, parties in interest, and the U.S. Trustee as directed by the Court.  *See* Doc# 221.

Objections to the Amended Plan were required to be filed on or before May 14, 2020.  VIP and US Trustee filed the only objections to the Amended Plan.  The US Trustee's objection to the Amended Plan will be resolved by a separate order, which will also resolve the US Trustee's Motion to Dismiss.  VIP's objection to the Amended Plan was resolved before the final confirmation hearing.

A hearing to consider Mobile Addiction's request for final approval of the Amended Plan was held by the Court on June 17, 2020.  After considering the Amended Plan, hearing statements by counsel, the proffer of Bill Long's testimony made by Mobile Addiction, and after due deliberation, the Court makes the following findings of fact and conclusions of law and issues the following order under 11 U.S.C. § 1129.

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 3

1.  **Findings and Conclusions.** The findings and conclusions set forth herein and the record of the hearing constitute the Bankruptcy Court's findings of fact and conclusion of law pursuant to Fed. R. Civ. P. 52, as made applicable herein by Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014. To the extent the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.  **Notice.** Any person or entity required to receive notice of the hearing to consider confirmation of the Amended Plan has received due, proper, and adequate notice thereof. All parties in interest have had the opportunity to appear and to be heard at the initial confirmation hearing on the Amended Plan held on May 21, 2020 and again at final confirmation hearing on the Amended Plan held on June 17, 2020.

3.  **Bankruptcy Code and Proponent Compliance – Section 1129(a) and Section 1129(a)(2) of the Bankruptcy Code.** The Amended Plan complies and Mobile Addiction has complied with the applicable provisions of the Bankruptcy Code, including, without limitation 11 U.S.C. §§ 1122, 1123, 1125, and 1126 thereof.

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 4

4. **Proposed in Good Faith – Section 1129(a)(3) of the Bankruptcy Code.**

The Amended Plan has been proposed in good faith and not by any means forbidden by law. Mobile Addiction advised counsel of its own choosing in: a) the formation of the Amended Plan, and b) the negotiation, execution, and delivery of the Amended Plan, and all other documents relating thereto were executed in conjunction with Amended Plan. Therefore, the Amended Plan satisfies Section 1129(a)(3) of the Bankruptcy Code.

5. **Payments – Section 1129(a)(4) of the Bankruptcy Code.** Any payments made or to be made by Mobile Addiction in connection with the Amended Plan or other post-confirmation claims process have been and hereby are approved by the Court as reasonable. Therefore, the Amended Plan satisfies the elements of Section 1129(a)(4) of the Bankruptcy Code.

6. **Section 1129(a)(5) and Section 1129(a)(6) of the Bankruptcy Code.** Mobile Addiction has complied with and satisfied the requirements of Section 1129(a)(5) and Section 1129(a)(6) of the Bankruptcy Code.

7. **Best Interest of the Creditor - Section 1129(a)(7) of the Bankruptcy Code.** With respect to each impaired class of Claims, each holder of a Claim of such class has accepted the Amended Plan or will receive or retain under the Amended Plan

on account of such Claim property of the value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if Mobile Addiction was liquidated under Chapter 7 of the Bankruptcy Code. No holder of a secured claim has made an election under Section 1111(b)(2) of the Bankruptcy Code. Therefore, the Amended Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

8. **Treatment of Priority Claims – Section 1129(a)(9) of the Bankruptcy Code.** Except to the extent that the holder of a particular claim has agreed otherwise and assuming that such expenses are applicable to Mobile Addiction, the Amended Plan provides, and the holders of such Claims have agreed:

(a) with respect to a Claim of a kind specified in Section 507(a)(2) of the Bankruptcy Code, on the Effective Date the holder of each such Allowed Claim will receive on account of such Allowed Claim cash equal to the amount of such Allowed Claim; and

(b) with respect to Claims of a kind specified in Section 507(a)(8) of the Bankruptcy Code, the holder of each such Allow Claim will receive on account of such Allowed Claim either: (i) cash equal to the amount of such Allowed Claim on or before the Effective Date, or (ii) deferred cash payments over a period not exceeding five (5) years of a value as of the Effective Date equal to the amount of

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 6

such Allowed Claim. Therefore, the Amended Plan satisfies Section 1129(a)(9) of the Bankruptcy Code.

**9.** **Opportunity to Vote; Acceptance Impaired Class – Section 1129(a)(8) and Section 1129(a)(10) of the Bankruptcy Code.** All holders of Claims and equity interests impaired under the Amended Plan have been given adequate opportunity to vote to accept or reject the Amended Plan. The non-insider holders of Allowed Claims in at least one (1) impaired class have voted to accept the Amended Plan within the requirements of Section 1126(c) of the Bankruptcy Code.

A total of 16 ballots have been cast in the case. VIP initially cast a negative ballot, but subsequently recast its ballot in favor of the Amended Plan as modified by this Order. The breakdown of ballots, as set forth in the Certificate of Voting (Doc# 260) and subsequently re-cast are as follows:

Class 1 – Not impaired and not entitled to vote.

Class 2 – Not impaired and not entitled to vote

Class 3 – Accepted

Class 4 – Accepted; although no ballots were cast by Claims in this Class

Class 5 – Accepted

Class 6 – Accepted; although no ballots were cast by Claims in this Class

Class 7 – Accepted.

Class 8 – Not entitled to vote.

Accordingly, all voting Classes have accepted the Amended Plan.

### 11. <u>Feasibility – Section 1129(a)(11) of the Bankruptcy Code.</u>

Confirmation of the Amended Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Mobile Addiction. Therefore, the Amended Plan satisfies Section 1129(a)(11) of the Bankruptcy Code.

### 12. <u>Payment of Fees – Section 1129(a)(12) of the Bankruptcy Code.</u> The

Amended Plan and the Order to be entered resolving the US Trustee's Objection to the Amended Plan and the US Trustee's Motion to Dismiss provide for the payment of all fees under 28 U.S.C. § 1930, including any US Trustee fees that are unpaid as of the date of confirmation. Therefore, the Amended Plan satisfies Section 1129(a)(12) of the Bankruptcy Code.

### 13. <u>Payment of Fees – Section 1129(a)(13) of the Bankruptcy Code.</u>

Mobile Addiction does not administer a retirement fund, and accordingly Section 1129(a)(13) of the Bankruptcy Code is inapplicable in this case.

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 8

14. **Payment of Fees – Section 1129(a)(14) of the Bankruptcy Code.**

Mobile Addiction has no domestic support obligations, and accordingly Section 1129(a)(14) of the Bankruptcy Code is inapplicable in this case.

15. **Payment of Fees – Section 1129(a)(15) of the Bankruptcy Code.**

Mobile Addiction is not an individual, so this section of 1129(a) does not apply.

16. **Payment of Fees – Section 1129(a)(16) of the Bankruptcy Code.** All transfers contemplated in the Amended Plan comply with Section 1129(a)(16) of the Bankruptcy Code.

17. **Cram-Down – Section 1129(b) of the Bankruptcy Code.** Because the Amended Plan was accepted by all Classes entitled to vote, Mobile Addiction is not required to invoke the cram down provisions of the Section 1129(b).

18. **Sections 1129(c) and 1129(d) of the Bankruptcy Code are Inapplicable.** Mobile Addiction seeks to only confirm the Amended Plan; therefore, Mobile Addiction has compiled with Section 1129(c) of the Bankruptcy Code. Additionally, Mobile Addiction submits and the Court finds that the principal purpose of the Amended Plan was not the avoidance of taxes or the avoidance of the application of Section Five Securities Act of 1933, and since no party has requested

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 9

relief pursuant to Section 1129(d) of the Bankruptcy Code, this statute is inapplicable.

19. **Section 1129(e) is not applicable to this Case.** This is not a small business case as that term is defined in the Bankruptcy Code, so Mobile Addiction was not required to comply with the deadlines set forth in 11 U.S.C. § 1129(e).

20. **Good Faith and Solicitation.** The solicitation of acceptances of the Amended Plan was done in good faith.

21. **Binding on Proponents and Holders.** Mobile Addiction and all holders of Claims in interest are bound by the Amended Plan within the meaning of 11 U.S.C. § 1141 of the Bankruptcy Code.

22. **Fair and Equitable.** The Amended Plan is fair and equitable to all parties in interest, including, without limitation, Mobile Addiction, all unsecured creditors, and all secured creditors.

**BASED ON THE FOREGOING, THE STATEMENTS OF COUNSEL AND THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

23. **Confirmation.** The Amended Plan is confirmed as modified by this Order.

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 10

24. **Amended Plan Obligations.** This Order will operate as a discharge of Mobile Addiction from claims, obligations, or liabilities except for those Claims, obligations, or liabilities to be paid or performed under the Amended Plan, the documents to be executed in conjunction therewith, or from any debt that arose before the date of such confirmation pursuant to the provisions in 11 U.S.C. § 1141(d)(1).

25. **Binding Order.** The provisions of the Amended Plan are binding on Mobile Addiction and all creditors of Mobile Addiction, and any parties in interest, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, beneficiaries, guardians, and similar officers, and any person claiming through or in any right of any such persons. The confirmed Amended Plan binds Mobile Addiction and any creditor, whether secured or unsecured, that is impaired under the Amended Plan. All creditors and parties in interest are hereby enjoined from: 1) the commencement, continuation, or issuance of employments of process of a judicial, administrative, or other action or proceeding against Mobile Addiction; 2) the enforcement against Mobile Addiction or against Mobile Addiction's Property of a judgment obtained before the commencement of the bankruptcy case; 3) any act to obtain possession of the Property of the Estate, Property from the Estate, or to

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 11

exercise control over Property of the Estate; 4) any act to create, perfect, or enforce any lien against property of the Estate; 5) any act to create, perfect, or enforce against Mobile Addiction's Property any lien to the extent that such lien secures a Claim that arose before the commencement of the Case; 6) any act to collect, assess, or recover a Claim against Mobile Addiction that arose before the commencement of the Case; 7) the setoff of any debt owing to Mobile Addiction that arose before the commencement of the Case. Nothing herein, however, enjoins any creditor or party in interest from the post-confirmation enforcement of the terms and conditions of the Amended Plan.

26.     **Acceptance of Documents.** Without any manner of limiting the relief granted pursuant to the preceding paragraph, each and every federal, state, and local governmental agency or department or similar units are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Amended Plan, including, but without limitation documents and instruments for recording in: (i) county recording offices or register of deed offices necessary to transfer title to or record or continue liens and encumbrances against real estate, and (ii) county and state offices wherein financing or

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 12

termination statements under the Uniform Commercial Code are authorized to be filed.

27.    **Jurisdiction.** The Court shall retain jurisdiction over the Chapter 11 case to the extent and the situation as provided for in the Amended Plan and in this Order, including, the exclusive jurisdiction to resolve all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation, or administration of the Amended Plan, the accompanying Amended Disclosure Statement, and this Order.

28.    **Effective Reference to Amended Plan in this Order.**   The failure to reference or discuss any particular provisions of the Amended Plan shall have no effect on the validity, binding effect, and enforceability of such provision, and each provision of the Amended Plan shall have the same validity, binding effect, and enforceability as fully set forth in this Order; provided, however, that the amendments herein take priority over the provisions in the Amended Plan.

29.    **Integration or Confirmation of Order Provisions.**   The provisions of this Order are integrated with each other and are non-severally and mutually dependent.   This Order incorporates by reference all terms and conditions of the

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 13

Amended Disclosure Statement and the Amended Plan that are not otherwise inconsistent (except as modified herein).

30.     **Announcements Made in Court and Amendments to the Amended Plan as Approved by the Court**.  Additionally, the terms of the Amended Plan are modified as follows:

(A)     the terms and conditions set forth in the Term Sheet attached as Exhibit A is incorporated into this Order by reference, is made part of this Order, and is incorporated as part of the Amended Plan.  To the extent the terms set forth in Exhibit A conflict with the terms in the Amended Plan, the terms in Exhibit A supersede and take precedence over the terms in the Amended Plan.

(B)     **Texas Comptroller's Class 3 and Class 5 claims** – The Texas Comptroller's Class 3 and Class 5 Claims are modified as follows:

1)     Notwithstanding anything else to the contrary in the Amended Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts (the "Comptroller"): (1) nothing provided in the Amended Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller in accordance with 11 U.S.C. § 553; (2) nothing provided in the Amended Plan or Confirmation Order shall affect or impair any rights of the Comptroller to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Amended Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Comptroller, the interest rate shall be the statutory rate of interest, currently 5.75%

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 14

per annum; and (5) the Comptroller is not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D); the Comptroller's administrative expense claims are allowed upon filing, subject to objection on substantive grounds.

2)　　The Comptroller's Claim 34-1 is allowed in the full amount. Mobile Addiction agrees to pay Claim 34-1 in full within sixty (60) months of the Mobile Addiction's bankruptcy Petition date. Payments shall be in equal monthly installments of principal and accrued interest. The first installment is due on the Amended Plan's Effective Date. Claim No. 34-1 shall accrue interest at the statutory rate of interest, currently 5.75% per annum, from the Amended Plan's Effective Date until paid in full. The Comptroller's Claim 34-1 is a Secured Claim to the extent of collateral value. The Comptroller's Claim 34-1 is an Unsecured Priority Claim pursuant to 11 U.S.C. §507(a)(8) to the extent of any shortfall in collateral value.

3)　　The Comptroller's Claim No. 35-2 is allowed in the full amount. Mobile Addiction agrees to pay Claim 35-2 in full within sixty (60) months of the Mobile Addiction's bankruptcy Petition date. Payments shall be in equal monthly installments of principal and accrued interest. The first installment is due on the Amended Plan's Effective Date. Claim No. 35-2 shall accrue interest at the statutory rate of interest, currently 5.75% per annum, from the Amended Plan's Effective Date until paid in full. The Comptroller's Claim 35-2 is a Secured Claim to the extent of collateral value. The Comptroller's Claim 35-2 is an Unsecured Priority Claim pursuant to 11 U.S.C. §507(a)(8) to the extent of any shortfall in collateral value.

4)　　A failure by Mobile Addiction or Reorganized Mobile Addiction to make a plan payment to an agency of the State of Texas shall be an Event of Default. If Mobile Addiction or Reorganized Mobile Addiction fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. Mobile Addiction and/or Reorganized Mobile Addiction can receive up to three (3) notices of default, however, the third default cannot be cured.

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 15

(C)   **VIP's Class 4 claim.**  Article 5.2.3 is modified to provide that Sections 7 and 11 (except that events of default shall be defined by the Term Sheet) in the Forbearance Agreement, and the Security Agreement attached to the Forbearance Agreement shall remain in full force and effect except as modified by the Plan and will serve as the Security Agreement securing payment of the Replacement Note described in Article 5.2.4.  VIP's negative ballot for its Class 4 Claim is hereby withdrawn and substituted with an accepting ballot.  VIP's objection to the Amended Plan is also withdrawn.

31.   **Final Order.** This Order is a final order to which an appeal must be filed and shall commence immediately upon the entry hereof. Notwithstanding Fed. R. Bankr. P. 3020(e), this order shall be effective and enforceable immediately upon the entry hereof.

# # #

SUBMITTED & APPROVED BY:

HINKLE LAW FIRM LLC
 /s/ Nicholas R. Grillot
Nicholas R. Grillot, #22054
1617 N. Waterfront Parkway, Ste. 400
Wichita, Kansas 67206-6639
(316) 660-6211 / (316) 660-6523, facsimile
ngrillot@hinklaw.com
*Attorneys for Mobile Addiction, LLC*

In the United States Bankruptcy Court for the District of Kansas
*In re: Mobile Addiction, LLC*
Case No. 19-11449-11
ORDER MODIFYING AND CONFIRMING MOBILE ADDICTION, LLC' AMENDED PLAN OF
REORGANIZATION DATED APRIL 8, 2020
Page | 16

APPROVED BY:

FLEESON, GOOING, COULSON & KITCH, L.L.C.


 /s/ Thomas J. Lasater
Thomas J. Lasater, #11440
301 N. Main, Suite 1900
Wichita, KS  67202
(316) 267-7361 / (316) 267-1754, facsimile
tlasater@fleeson.com
*Attorneys for VIP Wireless, Inc.*


AND

ERON LAW, P.A.

/s/ David Prelle Eron
David Prelle Eron, #23429
301 N. Main St., Suite 2000
Wichita, Kansas 67202
(316) 262-5500 / (316) 262-5559, fax
david@eronlaw.net
*Attorneys for the Unsecured*
*Creditors' Committee*


AND

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

/s/ Christopher T. Borniger
Christopher T. Borniger, #24692
301 N. Main St., Suite 1150
Wichita, Kansas 67202
(316) 269-6216 / (316) 269-6182, fax
Christopher.T.Borniger@usdoj.gov

In re Mobile Addiction, LLC
Case No. 19-11449-11

**Term Sheet for Agreement on Confirmation of the Amended Plan**

  The following terms memorialize the basic understanding between the Mobile Addiction, VIP Wireless, Inc., VIP Management MA LLC, and the Unsecured Creditor's Committee regarding the modification to Mobile Addiction's Amended Plan Dated April 8, 2020 to resolve VIP Wireless's objection to confirmation of that Amended Plan.

  1. The parties agree that the day-to-day operations of Mobile Addiction's Doors will be turned back over to Mobile Addiction, including all bank accounts that are currently used in Mobile Addiction's operations. The turn over of the day-to-day operations to Mobile Addiction will occur within 21 days from the entry of the order confirming the Amended Plan.

  2. Mobile Addiction's operating structure will be changed from a member-managed limited-liability company to a manager-managed limited-liability company.  As part of the new structure, Russ Thomas waives any right to be indemnified by Mobile Addiction for any conduct prior to July 31, 2019 that was not in furtherance of Mobile Addiction's operations.

  3. Bill Long will be named Manager and Chief Executive Officer of Mobile Addiction.  Bill Long will be in charge of all of Mobile Addiction's day-to-day operations.  Bill Long's salary will be commensurate with this position and will initially be set at $128,000.00 annually.

  4. In addition to his salary, Bill Long will receive a 1/3 membership interest in the reorganized Mobile Addiction and all references to Mobile Addiction are to the reorganized Mobile Addiction.  The membership interest in Mobile Addiction granted to Russ Thomas and Ash Salman in Section 6.3 of the Amended Plan will be decreased to a 1/3 membership interest in Mobile Addiction.

  5. (a) As of June 17, 2020 Mobile Addiction is operating under VIP Management MA LLC's Boost Mobile Retailer Agreement ("Retailer Agreement").  After confirmation of the Amended Plan ("Plan Confirmation"), VIP Management agrees that Mobile Addiction will be allowed to continue to operate under the Retailer Agreement until December 31, 2020.  Provided that Mobile Addiction is current on its payments under the Amended Plan to VIP Wireless and provided that Mobile Addiction is in compliance with the terms and conditions of the Retailer Agreement, Mobile Addiction's authorization to continue to operate under the Retailer Agreement will automatically extend for a period of 6-months or until June 30, 2021.  If Mobile Addiction remains current on its payments to VIP Wireless under the Amended Plan and continues to be in compliance with the Retailer Agreement, Mobile Addiction's authorization to continue to operate under the Retailer Agreement will automatically extend for a period of 6-months or until December 31, 2021.  At the end of this 6-month period, if Mobile Addiction remains current on its payments to VIP Wireless under the Amended Plan and continues to be in compliance with the Retailer Agreement, Mobile Addiction's authorization to continue to operate under the Retailer Agreement

will automatically extend for the remaining life of the Amended Plan so long as Mobile Addiction is current on its payments to VIP Wireless and is in compliance with the Retailer Agreement.

(b) In the event Mobile Addiction is in default under the terms and conditions of the Amended Plan or not in compliance with the requirements set forth under the Retailer Agreement, VIP Management may, at its option, terminate its agreement to allow Mobile Addiction to use its Retailer Agreement. Before VIP Management exercises its option to terminate its agreement under this Section, VIP Management agrees to provide Mobile Addiction written notice of such default under the Amended Plan or noncompliance with the Retailer Agreement and give Mobile Addiction at least 50% or half of the period provided to VIP Management in the Retailer Agreement to cure such noncompliance for Mobile Addiction to cure any such default or noncompliance. For example, if the Retailer Agreement gives VIP Management 60 days to cure any default under or noncompliance with the Retailer Agreement, Mobile Addiction's period of time to cure any such default or noncompliance would be 30 days. If the cure period provided to VIP Management in the Retailer Agreement is an odd number, Mobile Addiction will be given the larger number of days to cure any such default or noncompliance. For example, if the Retailer Agreement grants VIP Management 45 days to cure any such default or noncompliance under the Retailer Agreement, Mobile Addiction's cure period under this Section would be 23 days.

(c) In the event Sprint/Boost terminates the Retailer Agreement used by Mobile Addiction and Mobile Addiction is unable to operate as an authorized Sprint/Boost retailer and Mobile Addiction is in payment default under the terms of the confirmed Amended Plan, Mobile Addiction shall commence and complete an orderly liquidation of all of its doors and other assets with a right of first refusal of VIP Wireless based on its credit bid rights as a secured creditor up to the amounts then due VIP Wireless and allocated to the doors at the amounts designated in the spreadsheet referenced in Section 7(a). To the extent the amount due VIP Wireless exceeds the total value allocated to the doors on the spreadsheet, the VIP Wireless credit bid may be increased for each door on a prorate basis.

6. Paragraphs 8.a, 8.b, 8.d, 8.e, 8.f, 8.g and 8.h of the Third Agreed Order Modifying and Extending Final Cash Collateral Order (Doc. No. 276, the "Amended Cash Collateral Order")) shall be incorporated into the Amended Plan, except that Paragraph 8.d shall be modified to state, "Beginning on the date of the entry of an order confirming the Amended Plan and concluding 8 weeks thereafter, …." For all periods during which Mobile Addiction is operating using the Retailer Agreement, paragraphs 8.b and 8.c of the Amended Cash Collateral Order shall remain binding on VIP, so long as Mobile Addiction is not in default of Paragraphs 8.d, 8.e, 8.f, and 8.g or under the provisions of the Amended Plan.

7. In the event of default of the terms set forth herein, VIP Wireless shall have the following remedies:

(a) All remedies set forth in the Amended Plan, Cash Collateral Orders, Forbearance Agreement executed on February 18, 2019 as modified by the Amended Plan, Replacement Note modifying the payment terms of the Forbearance Agreement and any PPP Agreement between the parties; and

(b)  Upon a default based on a failure to pay amounts due VIP Wireless for products and services provided by VIP Wireless to Mobile Addiction pursuant to this Term Sheet or the Third Extension of the Final Cash Collateral Order after confirmation and provided that Mobile Addiction fails to cure such default within three days after such amounts became due, Mobile Addiction shall upon the written request of VIP Wireless sell, transfer and assign to VIP Wireless or its assignee one or more of Mobile Addiction's Doors located within a particular geographical market whose agreed value equals or exceeds the amount of the payment default for credit to cure the default.  It is understood that VIP Wireless and Mobile Addiction shall use their best efforts to transfer Doors in geographical groups that will maximize value and reduce overhead.  In the event of a PayGo payment default, there shall be no cure period other than the time period to "true up" the PayGo balance except that the provisions of Paragraph 8(e) of the Amended Cash Collateral Order will apply to any deficiencies Mobile Addiction owes VIP Wireless after the "true up" of the PayGo Balance and any deficiency Mobile Addiction owes VIP Wireless consistent with that Paragraph will not constitute a payment default under this Section.  The remedy provided for in this subsection is exercisable only at the option of VIP Wireless.  A spreadsheet with the agreed value for each Door and the agreed order the Doors are to be sold, transferred and assigned pursuant to this subsection is attached to the original copy of this Term Sheet, but is not attached to the Term Sheet attached to the Confirmation Order filed with the Bankruptcy Court.  Doors that have been permanently closed shall be removed from the spreadsheet upon closure.  Any extension of time or failure to enforce or utilize this remedy shall not be considered a waiver of this remedy for a subsequent payment default.

(c)  Upon a default based on a failure to pay the amount due VIP Wireless under Article V, Section 5.2 of the Amended Plan and provided that Mobile Addiction fails to cure such default within 10 days after such amount became due, Mobile Addiction shall upon the written request of VIP Wireless sell, transfer and assign to VIP Wireless or its assignee one or more of Mobile Addiction's Doors consistent with the terms set forth in Section 7(b) of this Term Sheet.  The cure period set forth herein shall be eliminated in the event of payment defaults in three consecutive months.

8.  After Plan Confirmation, Mobile Addiction will attempt to obtain a retailer agreement with Boost Mobile in its own name.  The terms of the Order Granting Motion to Vacate Order Approving Mobile Addiction, LLC's Management Contract with VIP Management MA LLC (Doc. No. 235) shall remain binding on the parties regarding such efforts, but the inability to obtain such a retailer agreement shall not render any of the remaining terms contained herein invalid or ineffective.

9.  Russ Thomas will receive no monthly draw during the first twelve months following Plan Confirmation, a monthly draw of $1,500 commencing in the thirteenth month following Plan Confirmation and continuing until VIP's Class 4 Claim in the Amended Plan has been reduced by 50%, then increasing to $3,000 for the following twenty-four months, and then increasing to $4,000 through the remaining term of the Amended Plan.  In exchange for providing advice and consultation to Bill Long and visiting doors in Ohio and Pennsylvania, Ash Salman will receive a monthly draw of $1,500 for the first six months following Plan Confirmation, $2,000 for the next six months, $2,500 for the next six months, and $3,000 thereafter.  Russ and Ash's

draw will be contingent upon Mobile Addiction being current on its monthly payments under the confirmed Amended Plan. Any changes to such distributions to the Members generally will be made in the discretion of the Board, subject to the following limitations: a) other than as set forth herein, no distributions shall be made for two years following Plan Confirmation, b) no distributions shall be made at any time when Mobile Addiction is not current on all of its obligations under the Amended Plan, c) no distributions shall be made if such distributions would pose a significant risk to Mobile Addiction's ability to remain current on all of its liabilities, d) VIP's Class 4 Claim in the Amended Plan has been reduced by 50%, and e) no distributions shall be made in any manner that would violate applicable state law or the Operating Agreement.

10.     During the two years following Plan Confirmation, other than the draws set forth above to Russ and Ash, no other distributions will be made to the members of Mobile Addiction except to the extent such distributions are necessary to pay the income taxes due on income attributable to the members by virtue of their membership interest, but only to the extent that such attributed income exceeds the amount of the draws actually received by the member.

11.     Prior to receiving any distribution from Mobile Addiction to cover income taxes as set forth in Section 10 above arising from phantom income attributable to members, all current and future Mobile Addiction income shall be allocated to Russ until all net operating losses of prior years, if any, have been exhausted. Prior years' net operating losses shall be calculated by Mobile Addiction's 1065 or Schedule C accumulated since the formation of Mobile Addiction.

12.     A board of directors will be created for Mobile Addiction ("Board"). The Board will consist of 4 members. Each member of Mobile Addiction will be a member on the Board. VIP Wireless will also be entitled to name one member of the Board. The Board shall operate as follows:

    a.  Operating Agreement. The new operating agreement shall include when and how board meetings will be called and conducted and other related board governance matters. The provisions of this Term Sheet shall control and supersede any conflicting provision of the operating agreement. The common law duties of care and loyalty shall apply to the members of the Board. The inability of the members to reach a mutually acceptable operating agreement shall not render anything in this Term Sheet or the Plan Confirmation Order ineffective.

    b.  The VIP Wireless Board member will be entitled to 3 votes. All other Board members will be entitled to 1 vote each.

    c.  So long as VIP Wireless remains on the Board, Russ Thomas shall be represented by his elected proxy, for his Board position. Tim Hodge will serve as Russ Thomas' proxy for his Board position for the first 18 months after confirmation of the Amended Plan.

    d.  Subject to the other terms contained herein, the Board shall have the exclusive right to make decisions regarding the termination, hiring, and compensation of the Manager and/or Chief Executive Officer, the sale or transfer of any Mobile Addiction "door" (with the exception of any sale or transfer of a "door" or "doors" made pursuant to VIP Wireless' remedies set forth in paragraph 7 above), changes to the membership of the Board provided hereunder, changing the DDP provider,

changing the wireless carrier from Boost Mobile to a different wireless carrier, and overriding any decisions of the Manager on significant matters (including but not limited to sales, acquisitions, or financing outside of the ordinary course of business and cumulatively valued at more than $50,000 within any 12 month period, the annual budget, the filing of a petition under Title XI, and termination, hiring, and compensation of other executive officers).

e.  In all matters, decisions by the Board shall be made only with a 70% majority vote, except regarding a) the termination of the Manager and/or Chief Executive Officer, b) changes to the membership of the Board, or c) modification to the terms set forth herein, all of which shall only be made with a unanimous vote; and any decision to increase member distributions shall require a simple majority vote. In any vote concerning the termination, hiring, and compensation of the Manager and/or Chief Executive Officer, the applicable Manager and/or Chief Executive Officer shall not be permitted to vote.

13.  VIP Wireless' membership on the Board will terminate either a) upon its resignation from the Board, or b) once all of the payments to VIP are made under the Amended Plan.

14.  VIP Wireless agrees to withdraw its objection to the Amended Plan and recast its ballot in favor of the Amended Plan.

[intentionally left blank]

The undersigned agree that the above terms reflect their agreement in principal for the confirmation of the Amended Plan.


Mobile Addiction, LLC

_____
By: _____
Title: _____

VIP Wireless, Inc.


_____
By: _____
Title: _____

VIP Management MA LLC


_____
By: _____
Title: _____


Unsecured Creditors Committee


_____
By: _____
Title: _____


_____
Charles R. Thomas


_____
Ashraf Salman


_____
Bill Long

The undersigned agree that the above terms reflect their agreement in principal for the confirmation of the Amended Plan.

Mobile Addiction, LLC

By: _____
Title: _____

VIP Wireless, Inc

By: JACK HUSTON .
Title: CEO

VIP Management MA LLC

By: Meir Spiegel
Title: CFo

Unsecured Creditors Committee

By: _____
Title: _____

_____
Charles R. Thomas

_____
Ashraf Salman

_____
Bill Long

Case 19-11449    Doc# 294    Filed 07/01/20    Page 23 of 27

The undersigned agree that the above terms reflect their agreement in principal for the confirmation of the Amended Plan.

Mobile Addiction, LLC

By: _____

Title: _____

VIP Wireless, Inc.

By: _____

Title: _____

VIP Management MA LLC

By: _____

Title: _____

Unsecured Creditors Committee

By: _Steven Peckar_

Title: _Chairman_

_____

Charles R. Thomas

_____

Ashraf Salman

_____

Bill Long

The undersigned agree that the above terms reflect their agreement in principal for the confirmation of the Amended Plan.

Mobile Addiction, LLC

_____
By: _____
Title: _____

VIP Wireless, Inc.

_____
By: _____
Title: _____

VIP Management MA LLC

_____
By: _____
Title: _____

Unsecured Creditors Committee

_____
By: _____
Title: _____

_____
Charles R. Thomas

_____
Ashraf Salman

_____
Bill Long

The undersigned agree that the above terms reflect their agreement in principal for the confirmation of the Amended Plan.

Mobile Addiction, LLC

By: _____

Title: _____

VIP Wireless, Inc.

By: _____

Title: _____

VIP Management MA LLC

By: _____

Title: _____

Unsecured Creditors Committee

By: _____

Title: _____

_____

Charles R. Thomas

_____

Ashraf Salman

_____

Bill Long

tee